UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 16-016 (PJS)

| UNITED STATES OF AMERICA, | ) |  |
|---|---|---|
|  | ) |  |
| Plaintiff, | ) |  |
|  | ) | GOVERNMENT'S MOTION FOR |
| v. | ) | REVOCATION OF ORDER OF |
|  | ) | RELEASE |
| JASON STEVEN MOE, | ) |  |
|  | ) |  |
| Defendant. | ) |  |

COMES NOW the United States of America, by and through its undersigned attorneys, Andrew M. Luger, United States Attorney for the District of Minnesota, and Thomas M. Hollenhorst, Assistant United States Attorney, and moves this Honorable Court pursuant to 18 U.S.C. § 3145(a)(1) to revoke the order of release issued by the Honorable Steven E. Rau, United States Magistrate Judge, on February 22, 2017, concerning the defendant, Jason Steven Moe.

I. Procedural History

On July 14, 2009, Moe was sentenced in the District of North Dakota to serve a term of imprisonment of 108 months, followed by a term of five years of supervised release. ECF 6 ("Violation Report") at 1. His sentence followed his plea of guilty to conspiracy to possess with intent to distribute a controlled in violation of 21 U.S.C. §§ 841(a)(1) and 846. *See* Presentence Investigation Report ("PSR") at 1; Violation Report at 1. On October 30, 2015, Moe was released from custody and his term of supervised release began. *See id*. On March 25, 2016, the Court ordered the transfer of jurisdiction of Moe's case from the District of North Dakota to the District of Minnesota. *See* ECF 4.

On January 25, 2017, the Court ordered that a warrant issue for Moe's arrest following the submission of a Petition on Supervised Release by United States Probation Officer Steven H. Blanding. ECF 5 ("Petition"). The Petition alleges that Moe violated the terms and conditions of his supervised release because he possessed a controlled substance on January 23, 2017,[1] failed to timely report to the probation office a change of residence, and failed to submit to five urinalysis tests. *Id.* If the Court finds that Moe violated the terms and conditions of his supervised release, Moe faces a guideline range of 37 to 46 months in prison. *See* Violation Report at 3; USSG § 7B1.4(a)(2).

On February 17, 2017, Moe was arrested by the United States Marshal and appeared before the Honorable Kate M. Menendez, United States Magistrate Judge. ECF 10. Judge Menendez ordered Moe's temporary detention pending a detention and preliminary revocation hearing set for February 22, 2017, before the Honorable Steven E. Rau, United States Magistrate Judge. At that hearing, the government called Probation Officer Blanding to testify as to the alleged violations. Judge Rau found that there was probable cause to support the allegations of the Petition but, over government objection, ordered Moe's release on conditions of bond (to include electronic monitoring). *See* ECF 13. The government advised Judge Rau of its intention to appeal and asked for a 24-hour stay of the release order, which Judge Rau granted. *Id.* A final revocation hearing is scheduled for March 15, 2017. *Id.*

---

1. The Petition incorrectly states January 23, 2014.

II. Statement of Facts

At the detention hearing, Probation Officer Blanding testified that on January 23, 2017, the police received a report from a motorist that he was following a car that was running stop signs, had almost hit a pedestrian, and had sped through a parking lot at 70 miles per hour. The police responded to the scene and identified the car and its driver. The driver said that Moe was his passenger and had gone into a nearby liquor store. The police spotted Moe acting suspiciously as he exited the liquor store. They stopped him and, during a pat-down search, seized from his pockets $2,074 in cash and approximately 10.4 grams of a substance that field-tested positive for methamphetamine. Moe was later charged in Hennepin County with third-degree possession of 10 grams or more of a controlled substance (other than heroin) in violation of Minn. Stat. § 152.023, subd. 2(a)(1). He was later released on bond.

Probation Officer Blanding also testified that on July 20, 2016, Probation Officer Kelly Moser (Moe's previous probation officer) attempted to make a home visit to Moe's approved address. *See* Violation Report at 2. Moe was not home, but his sister told Probation Officer Moser that Moe stayed with his girlfriend "most of the time." *See id.* On October 14, 2016, Probation Officer Moser met with Moe at the probation office to discuss his noncompliance, at which time Moe admitted that he was living with his girlfriend. *See id.*

Finally, Probation Officer Blanding testified that Moe missed a scheduled drug test on August 4, 2016. *See* Violation Report at 2. When confronted by Probation Officer Kelly Moser, Moe claimed he thought he was done with drug testing. *See id.* Knowing

3

otherwise, Moe then missed drug tests on September 22, 2016, November 18, 2016, December 22, 2016, and January 13, 2017. *Id.* Moreover, Moe has not complied with the "code-a-phone" testing program since December 17, 2016, which requires him to call in daily to determine whether he must report on a given day for drug testing.

Probation Officer Blanding also briefly summarized Moe's prior record. Moe's PSR provides more details. For example, in addition to numerous juvenile adjudications including third-degree burglary (two times), theft, fifth-degree assault, and possession of marijuana (1987 to 1989), Moe has prior adult convictions for fifth-degree possession of a controlled substance (1997), fifth-degree domestic assault (2000), and a first-degree controlled substance sale which involved two ounces of methamphetamine, $4,751 in cash, and a loaded handgun (2003). *See* PSR at ¶¶ 34-37. Moe's federal conviction followed a search of Moe's home in Minneapolis during which the police seized approximately 14 ounces (392 grams) of methamphetamine and over $20,000 in cash. *See* PSR at ¶ 9. In addition, during the period of that offense, Moe distributed dozens, if not hundreds, of pounds of methamphetamine to various customers. *See* PSR at ¶¶ 10-17.

### III. Argument

Rule 32.1 of the Federal Rules of Criminal Procedure states that if an offender appears before the court on a petition alleging violations of supervised release, "[t]he magistrate judge may release or detain the person under 18 U.S.C. § 3143(a)(1) pending further proceedings." Fed. R. Crim. P. 32.1(a)(6). "The burden of establishing by clear and convincing evidence that the person will not flee or pose a danger to any other person or to the community rests with the person." *Id.* This language replicates the burden as

stated in § 3143(a)(1); *see also United States v. Jacob*, 767 F.2d 505, 507 (8th Cir. 1985) (stating that § 3143 places "the burden on the defendant to show, not merely by a preponderance, but by 'clear and convincing evidence,' a greater than normal burden of proof, that he is not likely to flee or pose a danger to the safety of any other person or the community if released.").

If, after a detention hearing, a magistrate judge orders the release of a defendant, the government may file a motion for revocation of the release order "with the court having original jurisdiction over the offense." 18 U.S.C. § 3145(b). The motion for revocation must be determined promptly and is subject to *de novo* review by the district court. *See United States v. Maull*, 773 F.2d 1479, 1484 (8th Cir. 1985) ("[T]he court acts *de novo* and makes an independent determination of the proper pretrial detention or conditions for release.").

Here Moe has not met, and cannot meet, his burden of establishing "by clear and convincing evidence" that he will neither flee nor pose a danger to any other person or to the community if released on bond. In fact, there is overwhelming evidence that Moe indeed poses a danger to other persons and to the community if released. For example, despite three prior drugs convictions (including a state conviction for which he received a sentence of 60 months and a federal conviction for which he received a sentence of 108 months), Moe seems undeterred in his zeal to distribute drugs. Moe's arrest on January 23, 2017, clearly shows that he is willing to continue his drug trafficking activities even

while serving a term of federal supervised release.[2] Moreover, Moe's presence in a car (albeit as a passenger) which was being driven dangerously and erratically, and Moe's flagrant and repeated noncompliance with court-ordered drug tests and a residency reporting requirement indicates that he poses a risk of flight and a great danger to the community.

WHEREFORE, the government respectfully asks this Honorable Court to revoke the order of release and to order Moe's detention pending his final revocation hearing scheduled for March 15, 2017.

Dated: February 23, 2017

Respectfully submitted,

ANDREW M. LUGER
United States Attorney

s/*Thomas M. Hollenhorst*

BY: THOMAS M. HOLLENHORST
Assistant United States Attorney
Attorney ID No. 46322

---

2. At the detention hearing, there was some discussion as to whether the drug evidence seized from Moe on January 23, 2017, would be suppressed. Whether or not the evidence is suppressed in state court would have no bearing on these proceedings. *See United States v. Charles*, 531 F.3d 637, 640 (8th Cir. 2008) ("the exclusionary rule generally does not apply in revocation of supervised release proceedings.").